IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARTEK BIOSCIENCES CORPORATION,<br><br>Plaintiff,<br>v.<br><br>NUTRINOVA INC., NUTRINOVA NUTRITION SPECIALTIES & FOOD INGREDIENTS GmbH, and LONZA LTD.,<br><br>Defendants. | Civil Action No. 03-896-GMS |

**MARTEK'S MOTION TO STAY LITIGATION
PENDING REEXAMINATION OF THE PATENT-IN-SUIT**

Martek Biosciences Corporation respectfully requests a stay of this litigation in favor of the reexamination proceeding involving the only patent-in-suit -- U.S. Patent No. 5,698,244 ("the '244 Reexamination"). On August 5, 2010 the U.S. Patent and Trademark Office ("PTO") issued an office action rejecting all 22 claims in the '244 Reexamination. Thus, the validity of all of the claims of the '244 patent is squarely before the PTO. Accordingly, as a matter of judicial efficiency and economy, the present case should be stayed pending the outcome of the '244 Reexamination.

I. **Nature and Stage of Proceedings**

Martek brought this patent infringement action against Nutrinova Inc., Nutrinova Nutrition Specialties and Food Ingredients GmbH, and Lonza Ltd. (collectively "Lonza"). After a series of amended pleadings, claim construction, and discovery, a jury trial was held on three patents. The jury returned a verdict in favor of Martek on all counts, and Lonza filed post-trial motions and then appealed to the Federal Circuit. Martek cross-appealed with respect to the

claim construction of a fourth patent -- the '244 patent – which had been removed from the case by way of a stipulated dismissal following an unfavorable claim construction ruling. The Federal Circuit adopted Martek's claim construction and remanded the case to this Court for further proceedings consistent with that ruling.

On remand, this Court held status conferences on December 4, 2009 and March 15, 2010 to discuss the only patent remaining in the case, the '244 patent, and ultimately established a Scheduling Order, providing for various deadlines through summary judgment briefing in December 2010.

At present, fact discovery is ongoing, expert discovery has not begun and no depositions have been taken. Summary judgment briefing on the issue of double-patenting has been scheduled for December 2010.

On January 5, 2010, Lonza filed for reexamination of the '244 patent. (Reexamination Control No. 90/009,659, Reexamination Request). The PTO granted that request on March 5, 2010, and issued an office action rejecting all twenty-two (22) of the claims on August 5, 2010. All of the claims asserted by Martek against Defendants in this litigation are among the claims rejected by the PTO.

## II. The Decision to Stay a Case is Firmly Within the Discretion of the Court

The decision to stay a case is squarely within the discretion of the court as it is a matter of the court's "inherent power to conserve judicial resources by controlling its own docket." *Pegasus Dev. Corp. v. DirectTV, Inc.*, C.A. No. 00-1020-GMS, 2003 WL 21105073 (D. Del. May 14, 2003); quoting *Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985). This principle applies equally to patent cases in which a reexamination by the PTO has been requested. *Abbott Diabetes Care, Inc v. Dexcom, Inc.*, C.A. No. 05-590-GMS, 2006 WL

2375035 (D. Del. Aug. 16, 2006), citing *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination.").

The court's discretion on whether to grant a stay is guided by the following three (3) inquiries:

(i) whether a st ay would "unduly prejudice or present a clear tactical disadvantage to the non-moving party";
(ii) whether a stay will simplify the issues in question and trial of the case; and
(iii) whether discovery is complete and whether a trial date has been set.

*Abbott Diabetes Care*, 2006 WL 2375035 at *5, quoting *Xerox Corp. v. 3 Com Corp.*, 69 F. Supp.2d 404, 406 (W.D.N.Y. 1999) and citing *United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212, 217 (D. Del. 1991).

Each of these factors weighs heavily in favor of granting an immediate stay in this case. Each factor is discussed in turn below.

### III. The Facts of This Case Support Granting an Immediate Stay

    **A.**     **Factor #1: A Stay Will Not Unduly Prejudice Lonza Nor Present Lonza With a Clear Tactical Disadvantage Because 1) Both Parties Will Benefit from the PTO's Expertise; and 2) Lonza Previously Requested Just Such a Stay**

    **1.**     **No Undue Prejudice to Lonza**

All parties to this litigation, and the Court, stand to benefit from the PTO's expertise. The validity issues in this case are quite complex, and are identical to the issues on which the PTO has now issued a ruling. Lonza's specific invalidity contentions are spelled out in its discovery responses (solely by reference to Lonza's reexamination papers) and include lack of novelty under 35 U.S.C. § 102, obviousness under 35 U.S.C. § 103, and obviousness-type double

patenting. Furthermore, the defense on which Lonza would like summary judgment – obviousness-type double patenting – involves multifaceted legal issues.

Beyond Lonza's obviousness-type double patenting allegations, the balance of Lonza's invalidity contentions in this case are numerous. Specifically, Lonza relies on 34 prior art references, both singly and in myriad combinations. In fact, Lonza presents 312 such combinations, spanning 300+ pages in its Request for Reexamination, which Request for Reexamination is explicitly referenced in its initial discovery responses (Responses to Martek's First Set of Interrogatories, at pp. 15-16). By granting a stay in this case, the Court will gain the benefit of the PTO's particular expertise, in that all prior art presented to the Court will have first been considered by the PTO. Similarly, issues of whether certain claims are entitled to an earlier or later filing date are also presented, and notably complex, turning on the written description disclosure in various priority applications.

The '244 Reexamination will provide the parties, and the Court, with the benefit of the PTO's expertise regarding issues concerning obviousness-type double patenting, written description, effective filing date, and other matters. There is no question that the PTO's insight on these issues will assist all of the parties should resolution of this matter additionally require this Court's assistance following reexamination. Further, amendments relating to these issues may dispose of the defenses entirely or change entirely the issue to be litigated.

The PTO reexamination division is uniquely designed to analyze such validity matters. In fact, "Congress instituted the reexamination process to shift the burden or reexamination of patent validity from the courts to the PTO. Patent validity is a commonly asserted defense in litigation and courts are cognizant of Congress's intention to reduce costly and timely litigation."

*Canady v. Erbe Elektromedizin GmbH*, 271 F. Supp.2d 64, 78 (D.D.C. 2002) (citing H.R. Rep. No. 1307, 96th Cong., 2d Sess., pt. 7 at 4, *reprinted in* 1980 U.S.C.C.A.N. 6460).

Furthermore, judicial economy counsels against prematurely expending resources to resolve issues concerning claims that may be amended, eliminated, or narrowed by the patent reexamination process. The amendments that Martek anticipates making would likely require this Court to redo any prior analyses of the relevant issues. Thus, a stay would conserve both judicial and party resources that would be otherwise wasted if this litigation were allowed to proceed in parallel with the reexamination.

### 2. No Clear Tactical Disadvantage to Lonza

The requested stay would be in favor of a reexamination proceeding that Lonza itself initiated on January 5, 2010. Thus, Lonza stands to suffer no tactical disadvantage from a stay in view of that reexamination. Lonza crafted a detailed request for reexamination. By initiating reexamination, Lonza availed itself of "an inexpensive and expedient alternative to formal adversarial proceedings." *United Sweetner*, 766 F. Supp. at 216. If Lonza is correct in its validity challenge, and all of the asserted claims are unpatentable in view the claims of the '594 patent, or any of the asserted prior art, then this case is, in effect, over.

Furthermore, Lonza can hardly be heard to complain of any tactical disadvantage if a stay is granted since Lonza itself previously requested just such a stay. D.I. 352 (Status Conference Transcript) at p. 9, lines 12-13. At the time, Martek voiced its opposition to the grant of a stay as premature since the PTO had not yet issued an office action in the '244 Reexamination, and thus, it was not clear that the PTO would consider the merits of Lonza's invalidity assertions. Now that an office action has been issued, Lonza's invalidity allegations are squarely before the PTO,

which has (for now) accepted Lonza's arguments. Accordingly, rather than presenting a tactical disadvantage to Lonza, the grant of a stay in view of reexamination will simply provide Lonza the relief for which it previously petitioned this Court. *Id.*

### 3. Reexaminations Are Conducted With Special Dispatch and Thus, Any Potential Prejudice to Lonza Will Be Minimized

A stay pending reexamination does not threaten protracted or indefinite delay. The PTO is statutorily mandated to conduct reexaminations with "special dispatch." 35 U.S.C. § 305 ("All reexamination proceedings . . . will be conducted with special dispatch."). Thus, any prejudice potentially incurred by such a delay will be minimized because the overall pendency of the reexamination is expedited.

Moreover, reexaminations in which the patent at issue is involved in litigation, as here, are prioritized over other reexaminations. See MPEP 2261 (which provides in relevant part, "Any cases involved in litigation, whether they are reexamination proceedings or reissue applications, will have priority over all other cases.").

### 4. Lonza Knew About Its Key Piece of Prior Art, the '594 Patent, at the Beginning of This Litigation, Yet Waited Six Years to Assert It

Finally, any prejudice to Lonza is of its own making – the patent that forms the basis of Lonza's obviousness-type double-patenting defense is the '594 patent. Lonza has known about the '594 patent since at least June 2003 (see D.I. 13 at Exhibit 4 letter from Martek to defendant regarding the '594 patent) – and only raised the double-patenting defense a full six (6) years later - in 2009. Thus, the blame for any delay in resolving Lonza's obviousness-type double patenting defense rests squarely with Lonza itself.

B.   **Factor #2: A Stay Will Simplify the Issues in Question and Trial**

Courts tend to grant a stay of litigation when presented with a reexamination in which an office action rejecting claims has issued -- the rationale being that consideration of such issues during reexamination will likely simplify the issues for trial. *Enhanced Sec. Research, LLC v. Cisco Sys.*, C.A. No. 09-571-JJF, 2010 U.S. Dist. LEXIS 63789 (D. Del. June 25, 2010) (holding that issuance of an office action rejecting all claims of one of the patents favors a stay because it will "simplify the prior art issues and invalidity defenses which are likely to be raised in this action").

The double-patenting issue before the PTO in the '244 Reexamination is the same double-patenting defense that Lonza would like this Court to consider. In fact, Lonza's interrogatory response on the subject tracks its request for reexamination by explicitly referencing the '244 Reexamination Request. Thus, the PTO's consideration of the double-patenting issue during reexamination will likely simplify any remaining issues for trial, and therefore supports the grant of a stay.

1.   **Claims that Survive Reexamination May Be Different**

Having reviewed the Office Action, Martek anticipates that the '244 patent will be amended during reexamination. Current PTO statistics indicate that the majority of reexamined patents are amended. Exhibit A, Ex Parte Reexamination Filing Data – June 30, 2009, at 2. With respect to reexamination requests filed by Third Party Requesters, roughly three quarters or 73% of those reexamination certificates resulted in at least some amendments. *Id.*

Accordingly, any rulings by this Court on the claims as they now stand, are likely to result in wasted judicial resources. For example, if, in resolving some or all of the validity issues, the patent is amended during reexamination, this may require a retrial, or even a second round of summary judgment briefing, in view of the amended patent. Moreover, the retrial would have to address not just the new validity issues, but also new infringement issues.

### 2. All Claims Could Be Cancelled, Essentially Mooting the Litigation

Thirteen percent of all certificates of reexamination issued in connection with reexaminations by third party requesters result in all of the claims being cancelled. If no valid claim survives or comes out of the '244 Reexamination, the litigation before this Court would be rendered essentially moot.

### 3. A Stay Would Avoid the Possibility of Inconsistent Outcomes Between the PTO and This Court

Parallel litigation and reexamination proceedings run the risk of resulting in inconsistent outcomes. Once a request for reexamination is granted however, the PTO cannot stay reexamination. *Gioelle Enters. Ltd. v. Mattel, Inc.*, C.A. No. 99-375-GMS, 2001 WL 125340, at *1 (D. Del. Jan. 29, 2001); see also *Ethicon*, 849 F.2d at 1427. Thus, "the court's issuance of a stay is the only way to avoid the potential for conflict." *Gioelle*, 2001 WL 125340 at *2 (internal citations omitted). A stay would -- in addition to avoiding the possibility of inconsistent outcomes between the PTO and this Court -- prevent the issuance of an advisory opinion. *Abbott Diabetes*, 2006 WL 2375035 at *6, citing *Gioelle*, 2001 WL 125340, at *1.

    C.    **Factor #3: A Stay is Appropriate Because Discovery is in its Beginning Stages and No Trial Date Has Been Set**

        1.    **Discovery is in its Beginning Stages and Ongoing**

The fact discovery period is still open (closing September 30, 2010), and expert discovery has not even begun. As such, a prompt stay of litigation would allow the parties to save significant costs associated with document production and depositions.

        2.    **No Trial Date Has Been Set**

On March 26, 2010, the Court entered a scheduling order but set no trial date – with the last scheduled entry being summary judgment briefing in December 2010. (March 26, 2010 Minute Order, regarding proposed scheduling order D.I. 358). By granting a stay, the Court and the parties potentially avoid the time and expense of a trial and all of its trappings, such as motions in limine, factual stipulations, legal stipulations, witness lists, exhibits lists, objections to exhibits, jury instructions, special verdict forms, pretrial briefs, etc.

**IV.**    **CONCLUSION**

All three factors weigh strongly in favor of a stay. For the foregoing reasons, the Court should stay the instant litigation pending *ex parte* reexamination of the patent-in-suit.

*Of Counsel:*

Calvin P. Griffith
JONES DAY
901 Lakeside Avenue
Cleveland, OH 44114-1190
(216) 586-3939

Samuel B. Abrams
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3500

Christine B. Chua
DECHERT LLP
2440 W. El Camino Real, 7th Floor
Mountain View, CA 94040-1499
(650) 813-4877

Dated: August 31, 2010

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*
_____
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
Andrew C. Mayo (I.D. #5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
jday@ashby-geddes.com
tlydon@ashby-geddes.com
amayo@ashby-geddes.com

*Attorneys for Plaintiff Martek Biosciences Corporation*